Filed 4/25/13  P. v. Sorenson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONALD SORENSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B242938<br>(Super. Ct. No. F472797)<br>(San Luis Obispo County) |

Ronald Sorenson appeals from a judgment declaring him to be a mentally disordered offender (MDO) and committing him to the Department of Mental Health for treatment.  (Pen. Code, § 2962.)[1]  Appellant contends that no admissible evidence was offered to support the trial court's findings that appellant's commitment offense involved the use of force or violence, and that he received the requisite 90 days of treatment within the year prior to his hearing before the Board of Parole Hearings (BPH).  We affirm.

FACTS AND PROCEDURAL HISTORY

In 2010, appellant was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) and was sentenced to state prison.  After the BPH determined that appellant

---

[1] All further statutory references are to the Penal Code.

was an MDO subject to involuntary treatment as a condition of his parole, appellant filed a petition for hearing and waived his right to a jury trial.

Dr. Phylissa Kwarnter, a clinical psychologist at Atascadero State Hospital (ASH), testified at the hearing. Dr. Kwartner interviewed appellant and spoke with his treatment team. The doctor also reviewed appellant's medical records, his prior MDO evaluations, and his probation report regarding the commitment offense. Based on this information, Dr. Kwartner opined that appellant met the criteria for MDO treatment.

Appellant suffers from paranoid schizophrenia, which qualifies as a serious mental disorder under the MDO law. Appellant began requiring treatment in 1969, when he was 18 years old. He has been hospitalized in state facilities on 23 separate occasions. His symptoms include paranoid delusions, conspiracy theories, disorganized thoughts, rambling and tangential speech, catatonia, agitation, and poor impulse control. He has been found incompetent to stand trial on six separate occasions.

Based on her review of the probation report regarding appellant's assault with a deadly weapon conviction, Dr. Kwartner concluded that appellant's mental illness was at least an aggravating factor in his commission of the offense. Appellant started a fire at a bus station, then threw burning debris at an employee and peace officers. The debris struck the employee, burning his left hand and singeing off his eyebrows. Appellant demonstrated his paranoia by suggesting that he threw the debris to protect himself.

Dr. Kwartner opined that appellant's mental illness was not in remission as of the date of the BPH hearing. Appellant admitted he was exhibiting signs of his illness several months after the hearing. The day prior to the hearing, a psychiatrist noted that appellant was guarded and irritable. Since the hearing he has been aggressive, irritable, and agitated and has been removed from two group therapy sessions. The doctor also opined that appellant's mental illness could not be kept in remission without treatment because he refuses to take his prescribed medications or follow his treatment plan.

Dr. Kwartner opined that appellant had received at least 90 days of treatment during the year prior to his BPH hearings. She reached this conclusion based

2

on records indicating he had received 173 days of treatment during that period. The doctor further opined that appellant continued to represent a substantial danger of physical harm by reason of his mental disorder. Appellant had been hospitalized five times after committing violent offenses, which included a 1990 conviction for assault with a deadly weapon on a peace officer, a 2005 conviction for elder abuse, and a 2010 conviction for battery on a peace officer. Appellant was convicted of elder abuse after hitting and kicking his mother while she was lying on the ground. Appellant was still exhibiting the symptoms that were present when the commitment offense was perpetrated and refused to take his medications, and displayed a tendency to engage in violent behavior when in the community.

Appellant testified in his own behalf. He claimed he did not know what schizophrenia was and denied ever speaking with Dr. Kwartner. Appellant denied starting the fire that led to his commitment offense and claimed he had accidentally let go of the burning debris after being sprayed with something. He also denied hitting his mother or ever being charged with doing so.

Appellant did not believe that any of his violent acts had anything to do with a mental disorder. If he did have a mental disorder, "it is rather sporadic" and "has nothing to do . . . with aggressive things." He also claimed he did not have any medication to take because "[m]edication is something you come to an agreement with your dispensing or diagnosing or prescribing medical personnel" and he had yet to come to such an agreement.

At the conclusion of the trial, the court found that appellant met the MDO criteria and accordingly denied his petition and ordered him committed for treatment.

DISCUSSION

Appellant contends the order committing him for MDO treatment must be reversed because no admissible evidence was offered to prove two of the statutory criteria for such a commitment, i.e., that his commitment offense involved the use of force or violence and that he had received at least 90 days of treatment during the year prior to the BPH hearing. (§ 2962, subds. (c) & (e)(2)(P).) He claims that Dr. Kwartner's

3

testimony to that effect, which was based on appellant's probation report, was inadmissible hearsay and not the proper subject of expert testimony. In so arguing, he urges us to disapprove our contrary conclusion in *People v. Miller* (1994) 25 Cal.App.4th 913 (*Miller*).

After the briefs were filed in this case, we reaffirmed *Miller*'s well-established rule that "[a] qualified mental health professional may rely on a probation report to render an opinion whether a defendant is an MDO." (*People v. Stevens* (2013) 213 Cal.App.4th 1401, 1403; see also *People v. Valdez* (2001) 89 Cal.App.4th 1013, 1017; *People v. Campos* (1995) 32 Cal.App.4th 304, 310.) We also made clear that each of the MDO criteria—including the two at issue here—are the proper subject of expert medical opinion testimony. (*Stevens,* at pp. 1403, 1407.) In doing so, we disagreed with contrary dicta recently expressed by our colleagues in *People v. Baker* (2012) 204 Cal.App.4th 1234, 1246. (*Stevens,* at pp. 1406-1407.)[2] "We explained in *Miller* that a doctor can rely on reliable hearsay contained in a probation report in forming an expert opinion as to 'force or violence,' or a threat thereof. If the opinion is too speculative, we are confident that the trial court will not allow such opinion. We have explicated *Miller* and have shown, legally and logically, why there is a 'mental health' component to each of the MDO factors. In our view, the MDO procedures that we adopted in *Miller* have served the prisoners and the People well for almost 20 years." (*Stevens,* at p. 1408.)

---

[2] We further note that the record also contains a computer printout from CLETS reflecting that appellant was convicted of assault with a deadly weapon. Aside from appellant's failure to object to this document, it was admissible to prove the conviction under the official records exception to the hearsay rule. (*People v. Morris* (2008) 166 Cal.App.4th 363, 367.) Although assault with a deadly weapon is not among the crimes expressly enumerated under the MDO law, the crime is, by definition, one involving the use of force or violence. (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 ["Section 245 . . . defines only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury . . . .' The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon"].) The CLETS sheet is thus sufficient to prove that appellant's commitment offense qualifies him for MDO treatment. (§ 2962, subd. (e)(2)(P).)

Appellant offers nothing to convince us otherwise.  Accordingly, his claim of insufficient evidence fails.

The judgment (order of commitment) is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Teresa Estrada-Mullaney, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.