[No. E053641. Fourth Dist., Div. Two. Apr. 11, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
LENNETT BAKER, Defendant and Appellant.

1236

## COUNSEL

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, Acting P. J.**—Defendant and appellant Lennett Baker appeals a judgment pursuant to Penal Code section 2962, finding that she qualifies as a mentally disordered offender.[1] She contends that there was insufficient evidence to support the trial court's finding because the prosecution relied on inadmissible hearsay in the guise of expert opinion testimony and that the testimony in some respects exceeded the scope of the expert witness's expertise.

---

[1] All statutory citations refer to the Penal Code unless another code is specified.

Although we agree that some of the expert witness's testimony was incompetent hearsay and that some of her testimony exceeded the scope of admissible expert opinion testimony, we conclude nevertheless that substantial evidence supported the trial court's finding that Baker qualifies as a mentally disordered offender. Accordingly, we will affirm the judgment.

## PROCEDURAL HISTORY

On February 8, 2005, Baker was convicted in the Superior Court of Kern County on a plea of nolo contendere to one count of arson of an inhabited structure. (§ 451, subd. (b).) She was sentenced to a term of three years in state prison.[2] On June 21, 2010, the Board of Parole Hearings[3] determined that Baker was a mentally disordered offender (MDO) within the meaning of section 2962. It sustained the requirement that she receive mental health treatment as a condition of parole. On June 30, 2010, Baker challenged that finding in the Superior Court of San Bernardino County.

At a bench trial on May 18, 2011, the court found that Baker met the criteria of section 2962. Baker filed a timely notice of appeal on May 19, 2011.

## FACTS

*The Prosecution Case*

At the hearing on Baker's petition, the prosecution's only witness was Dr. Kathi Studden, a licensed psychologist employed by the Department of Corrections and Rehabilitation to perform evaluations of prisoners to determine whether they qualify as mentally disordered. She had performed some 3,500 such evaluations and had testified as an expert about 20 times.

On April 19, 2010, Dr. Studden interviewed Baker at the California Institution for Women. Before interviewing her, Dr. Studden reviewed Baker's central file, which contained "all of the criminal type information," including a description of the crime, probation officer's reports, and information

---

[2] As we discuss below, the evidence concerning Baker's crime and sentence was hearsay, most of which Baker objected to. For purposes of discussion only, we take judicial notice of the records of the Superior Court of Kern County, *People v. Baker* (2005, No. BF104133A). (Evid. Code, § 452, subd. (d).)

[3] Effective July 1, 2005, the former Board of Prison Terms was abolished, and all statutory references to the Board of Prison Terms were deemed to refer instead to the Board of Parole Hearings. (§ 5075, subd. (a); *Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1060, fn. 4 [116 Cal.Rptr.3d 530, 239 P.3d 1228].) The form provided to Baker to petition for review of the board's decision uses the old terminology.

concerning Baker's performance on parole. She also reviewed Baker's medical record, which contained a history of her mental health treatment while in prison. The prison records showed that Baker was receiving mental health care while in prison "at the enhanced outpatient level of care, which is a fairly high level of care." Dr. Studden testified that the records showed that Baker had received more than 90 days of treatment prior to the time of the Board of Parole Hearings hearing on June 21, 2010.

Dr. Studden testified that Baker was serving a three-year sentence for arson of an inhabited structure. She testified that the probation officer's report stated that on October 14, 2003, Baker was living at her mother's house, where her brother also resided, when the structure burned. The report stated that the fire department determined that the fire had been deliberately set because there were two separate locations where fires had started. The report indicated that two people had needed treatment for smoke inhalation.

Dr. Studden testified that the reports indicated that Baker had first told her brother that a bomb had gone off in the house and later told investigators that demons had set the fire and that they would be able to see that because "they" have cameras in the room watching her. Dr. Studden opined that the arson was a qualifying offense (under § 2962) because it posed a danger to others, including potential fatalities. She also opined that the crime was caused or aggravated by a mental illness. She felt that Baker was paranoid and acting out against her paranoia.

Based on her review of the record and her interview with Baker, Dr. Studden diagnosed Baker's condition as psychotic disorder, not otherwise specified. She testified that Baker had "very prominent delusions" of grandeur and paranoia. About two months before the interview, Baker had typed a 10-page letter which contained a lot of paranoid ideation, including that she had patented cell phones and that China wanted her to be released so she could go work for them, that the "White Lords of Bakersfield" were in charge, that people were watching her, and that someone had killed her son. The letter indicated that law enforcement and the prison system were out to get her. Both the letter and the interview showed disorganized thinking. Baker's mother had also reported that Baker had "lost her mind" sometime before the arson incident.

Dr. Studden opined that as of the date of the Board of Parole Hearings hearing, Baker's mental illness was not in remission. She reported that Baker had stated that she would not take psychotropic medication if it was given to her. Baker's records showed that she had been refusing medication. Baker's records indicated that she had a history of alcohol and drug abuse, and Dr. Studden opined that this exacerbated her mental illness.

Finally, Dr. Studden opined that Baker posed a substantial danger of physical harm to others because of her severe mental disorder and her history of acting out against others. Further, based on Baker's history of noncompliance with her prescribed medications and her lack of insight into her condition, Dr. Studden believed that if Baker were not in a supervised setting, she would not take her medications and would decompensate further and become even more dangerous.

### The Defense Evidence

Baker was the sole witness who testified on her behalf. She testified that she had received her real estate license at the age of 21 and got her broker's license at the age of 23. In 1982, she graduated from Bakersfield College with an AA (Associate in Arts) degree in computer information systems and accounting. In 1984, she graduated from Cal Poly Pomona with an engineering degree. She also attended ITT Technical Institute and graduated in 1983.

Baker denied that she had ever spoken to Dr. Studden. She said that when she arrived for her evaluation, her roommate was talking to Dr. Studden and pretending to be her. (Dr. Studden denied having spoken to Baker's roommate and identified Baker as the person she evaluated.) Baker had just had some teeth extracted and told Dr. Studden that she could not talk to her. Baker denied having written the letter Dr. Studden had described.[4] She denied that she had received any mental health treatment while she was in custody and stated that she had not received 90 days of treatment before her release date. She had been at Patton State Hospital since May 17, 2010 (her release date). She had been in state prison for several months before that, but she had been in the medical unit for housing only; she was not receiving treatment.

Defendant testified that she had not deliberately set a fire at her mother's house. She testified that she was doing some housework and had just emptied an ashtray into a wastebasket when a neighbor came over and asked to borrow some money. He also told her that someone wanted to harm her. She went to the store, and while she was gone, a fire had started in the wastebasket and burned some blinds. She surmised that there had been a partially lit cigarette in the ashtray. She pointed out that in the probation report her mother also said that the fire was an accident.

Baker said that the second fire, the one which actually burned the structure, was later that same day and that she had had nothing to do with it. She said that she had been arrested that day, and while she was in custody, she saw the

---

[4] The letter was admitted into evidence as exhibit A.

house fire being reported on the 10:00 o'clock news. She also said when she was later contacted by the police, they said that someone wanted to harm her. They told her it would be best if she came in. She told them that she had not deliberately set the fire but had only accidentally caused the wastebasket fire.

Baker testified that she had invented some technology which, she had been told, was profound and would have global impact. She was not being acknowledged "because of my color and ownership of this technology." On the day of the fire, she was getting ready to go see someone about her technology. She was told that no one would be permitted to have ownership of such technology, especially a Black person, "because it would give other [B]lacks [the] idea that they have superior capabilities as of [W]hites; therefore, they are never going to let me out."

Baker testified that three days before the fire, some police officers came to her house. She had accessed the Bakersfield Police Department computer in reference to the White Lords of Bakersfield, a group that had written about how they were going to lock up colored people using the MDO program to incarcerate innocent people. She said she found out that inside the police department, there is a cult which states that they are children of Satan and worship "demonistic" things. She denied that she had "hacked" into the police computer; she had "DOD" clearance through "JPL."[5]

Baker testified that although she had been arrested for assault on a person, it was a mistake and the charges had been dismissed.

Baker said she had been taken off medications in 1978 and that she had not had to use any medication since then. She had been stable since that time and had been living on her own and helping her son finish college. He was killed shortly after he graduated. She also said she had been taken off psychotropic medications in 2008. She denied having been mentally ill on June 21, 2010. However, she said that "When you are [B]lack and you own technology . . . our government as we know . . . if they want to take that technology, they will do things to cause you to develop mental illnesses."

*The Trial Court's Ruling*

The trial court found that Baker had a severe mental disorder and that it was one of the causes or a contributing factor in the commission of arson. It found that she had committed a qualifying crime; that she had been treated for the requisite 90 days within the year preceding her parole release date; that her mental illness was not in remission and could not be kept in

---

[5] Presumably the Department of Defense and Jet Propulsion Laboratory, respectively.

remission without further treatment; and that because of her mental disorder, she represented ·a substantial danger of physical harm to others. Based on these findings, the court found beyond a reasonable doubt that Baker met all of the criteria under sections 2962 and 2966, subdivision (b) and therefore qualified as ·an MDO.[6]

## LEGAL ANALYSIS

## THE SUFFICIENCY OF THE EVIDENCE

### *Introduction*

The MDO act (§ 2960 et seq.) imposes as a condition of parole that prisoners meeting the certain criteria (which we discuss below) must continue to be treated by the State Department of Mental Health. (§ 2962.)

A prisoner who challenges a finding that he or she is an MDO is entitled to a trial at which the prosecution must prove, beyond a reasonable doubt, that the prisoner meets all of the criteria set forth in section 2962. (§ 2966, subd. (b).) In this case, Baker contends that the evidence was insufficient to support the judgment because the court relied on evidence which was both hearsay and not within the expertise of the testifying witness to prove two of the criteria needed for a finding under section 2962.

### *Statutory Background*

██ " 'The Mentally Disordered Offender Act (MDO Act), enacted in 1985, requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment . . . until their mental disorder can be kept in remission. [Citation.]' [Citation.] . . .

"The MDO Act provides for treatment of certified MDO's at three stages of .commitment: as a condition of parole, in conjunction with the extension of parole, and following release from parole. Section 2962 governs the first of

---

[6] Baker does not address the absence of a finding that she met the criterion set forth in section 2962, subdivision (d)(1), i.e., that specified mental health professionals have evaluated the prisoner and have found that criteria (2) through (4) are satisfied, and the chief psychiatrist of the Department of Corrections and Rehabilitation has certified that criteria (2) through (5) have been satisfied and also that "by reason of his or her . . . disorder the prisoner represents a substantial danger of physical harm to others" (§ 2962, subd. (d)(1)), nor does she discuss the sufficiency of the evidence as to that criterion. (See *Lopez v. Superior Court, supra,* 50 Cal.4th 1055.) Consequently, any contention that the evidence was insufficient or that the court failed to make any necessary findings is forfeited.

the three commitment phases, setting forth the six criteria necessary to establish MDO status; these criteria must be present at the time of the State Department of Mental Health's and Department of Correction and Rehabilitation's determination that an offender, as a condition of parole, must be treated by the State Department of Mental Health. . . .

■ "Challenges to the first phase of commitment are governed by sections 2964 and 2966, subdivisions (a) and (b). Section 2964 provides in pertinent part that '[a]ny prisoner who is to be required to accept treatment pursuant to [s]ection 2962 shall be informed in writing of his or her right to request a hearing pursuant to [s]ection 2966.' Section 2966, subdivisions (a) and (b), set forth the procedure an MDO may utilize to challenge the propriety of his or her initial commitment. Should an individual disagree with an MDO certification decision, he or she may request a hearing before the [Board of Parole Hearings], and may request that independent mental health professionals evaluate the offender. [Citation.] If '[a] prisoner . . . disagrees with the determination of the [Board of Parole Hearings] that he or she meets the criteria of [s]ection 2962, [he or she] may file . . . a petition for a hearing on whether he or she, as of the date of the [Board of Parole Hearings] hearing, met the criteria of [s]ection 2962.' [Citation.]" (*Lopez v. Superior Court, supra,* 50 Cal.4th at pp. 1061–1062.)

In such a challenge to the first phase of commitment, the People have the burden of proving beyond a reasonable doubt (§ 2966, subd. (b)) six criteria: (1) the prisoner has been sentenced to prison for a qualifying offense; (2) "[t]he prisoner has a severe mental disorder"; (3) the disorder "is not in remission or cannot be kept in remission without treatment"; (4) the disorder "was one of the causes of or was an aggravating factor in the commission of [the] crime"; (5) "[t]he prisoner has been in treatment for the . . . disorder for 90 days or more within the year prior to the prisoner's parole or release"; and (6) specified mental health professionals have evaluated the prisoner and have found that criteria (2) through (4) are satisfied, and the chief psychiatrist of the Department of Corrections and Rehabilitation has certified that criteria (2) through (5) have been satisfied and also that "by reason of his or her . . . disorder the prisoner represents a substantial danger of physical harm to others." (§ 2962; see also *Lopez v. Superior Court, supra,* 50 Cal.4th at p. 1059, fn. 3.)

Baker concedes that there was sufficient evidence that "she suffered from a mental disorder, her severe mental disorder was a cause or aggravating factor of her commitment offense, she was not in remission, and she represented a substantial danger of physical harm to others by reason of her mental disorder." She contends, however, that there was insufficient evidence that she had committed a qualifying offense and that she had received 90 days of

treatment for her mental disorder in the year prior to her release date. "We review the court's finding on an MDO criterion for substantial evidence, drawing all reasonable inferences, and resolving all conflicts, in favor of the judgment. [Citations.]" (*People v. Martin* (2005) 127 Cal.App.4th 970, 975 [26 Cal.Rptr.3d 174].)

### Evidence of the Commitment Offense

██ Section 2962, subdivision (b) requires a finding that the prisoner's "severe mental disorder was one of the causes of or was an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison." That requirement is satisfied if the prisoner received a determinate sentence for the crime, pursuant to section 1170, and if the prisoner's crime was among those enumerated in section 2962, subdivision (e)(2). Subdivision (e)(2)(L) provides that subdivision (b) is satisfied by a conviction and sentence for "[a]rson in violation of subdivision (a) of Section 451, or arson in violation of any other provision of Section 451 . . . where the act posed a substantial danger of physical harm to others."

As Baker points out, the prosecution did not introduce an abstract of judgment or any other document which explicitly showed the nature of her underlying conviction. Even the probation report, a portion of which was introduced into evidence, does not state the Penal Code section under which Baker was convicted or the sentence imposed.[7] She contends that the only evidence which established the nature of the offense was Dr. Studden's testimony. Dr. Studden testified that she reviewed Baker's "central file, which has all of the criminal type information," including a description of the crime and the sentence Baker was serving. That file stated that Baker was convicted of arson on an inhabited structure. It also described the underlying facts, including the fact the structure burned was Baker's mother's house, that Baker and her brother were living there, and that two people were taken to the hospital to be treated for smoke inhalation.

Baker contends that this testimony was hearsay, and that although it was permissible for Dr. Studden, as an expert witness, to describe the documents she relied upon to reach her conclusions as to Baker's MDO status, Dr. Studden's testimony as to the contents of documents which were not admitted into evidence was not admissible as proof of the facts asserted in the documents. She points out that in the absence of any nonhearsay evidence, the court could have relied only on Dr. Studden's testimony to establish that Baker's commitment offense met the criteria of section 2962. The Attorney General

---

[7] Exhibit 1, as contained in the record on appeal, includes only the title page, page 3 and page 8 of the probation officer's report. Those pages do not include this information.

responds that even if Dr. Studden's testimony was hearsay for purposes of proving the truth of the facts on which she relied to form her opinion, the court nevertheless properly relied on her testimony as proof of the facts concerning the commitment offense because Baker did not object on hearsay grounds.

█ It is true that "Under a[] long-standing rule, 'incompetent hearsay admitted without objection is sufficient to sustain a finding or judgment.'" (*Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1268 [20 Cal.Rptr.3d 673], fn. & italics omitted.) However, Baker *did* object, at least to some of Dr. Studden's testimony. She did not object to the question which elicited Dr. Studden's response that Baker was convicted of arson of an inhabited structure. She did interpose a hearsay objection to the question "do you know how long she was sent to prison" for arson.[8] She also objected to the question "Do you know the facts" underlying the arson conviction on grounds of hearsay and "[b]eyond the scope of expertise." She interposed the same objections to the question "do you know whether or not anyone had to receive medical help" as a result of the arson. She also objected on grounds of "lack of expertise" and "calls for a legal conclusion" to the question "Did you have a belief at the time that you were [reviewing prison records] as to whether the crime of arson of the inhabited structure was a qualifying one in that it posed a danger to others?" The court overruled these objections.

█ These objections were all well taken and should have been sustained. An expert's opinion is admissible only with respect to a subject "that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).)[9] Whether the arson posed a substantial danger of physical harm to others is not a question Dr. Studden was competent to answer. To the extent that this is a factual question, it is not one requiring the opinion of an expert to assist the trier of fact. (Evid. Code, § 801, subd. (a).) █ To the extent that Dr. Studden's opinion was based on a legal conclusion, it is not substantial evidence. (*Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841 [199 Cal.Rptr. 830] [expert is not authorized to testify to legal conclusions in the guise of expert

---

[8] Baker does not raise any issue on appeal concerning the evidence relied upon by the prosecution to prove that Baker was sentenced to a determinate term for her commitment offense as required by section 2962, subdivisions (b) and (e)(1).

[9] For this reason, we disagree with the statement in *People v. Miller* (1994) 25 Cal.App.4th 913 [31 Cal.Rptr.2d 423], on which the Attorney General relies, that "Whether or not a prisoner is an MDO is the proper subject for expert opinion. Such an opinion necessarily entails an opinion as to each of the criterion [*sic*] or elements thereof." (*Id.* at p. 917.) Although an expert opinion is required as to some of the criteria in order to determine whether the prisoner is an MDO, expert opinion is *not* necessary—or admissible—with respect to the facts underlying the offense or whether the offense posed a risk of harm to others, or the factual inquiry as to whether the prisoner received 90 days of treatment.

opinion].)　█　Finally, although qualified experts may rely upon and testify to the sources on which they base their opinions, including hearsay of a type reasonably relied upon by professionals in their field (*People v. Nazary* (2010) 191 Cal.App.4th 727, 749 [120 Cal.Rptr.3d 143]), they may not relate the out-of-court statement of another as independent proof of the facts asserted in the out-of-court statement (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743 [74 Cal.Rptr.3d 715]). Nor may a court rely on hearsay as related by an expert as the basis for his or her opinion as independent proof of the facts asserted in the hearsay statement: "[A] witness's on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into 'independent proof' of any fact. [Citations.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 619 [59 Cal.Rptr.2d 356, 927 P.2d 713]; see also *People v. Martin, supra,* 127 Cal.App.4th 970, 977.) For these reasons, Dr. Studden's testimony did not constitute substantial evidence that the commitment offense met the requirements of section 2962, subdivisions (b) and (e).

█　The sole question pertaining to the determination that the underlying offense met the criteria of section 2962, subdivisions (b) and (e) to which Baker did not object as either hearsay or as beyond the scope of expert opinion testimony was the question as to the nature of the offense. Because there was no objection, the court could properly rely on Dr. Studden's response that Baker was convicted of arson of an inhabited structure. However, the mere fact of Baker's conviction for arson of an inhabited structure does not establish that the offense satisfied section 2962, subdivision (b). As noted above, section 2962, subdivision (e)(2)(L) provides that section 2962, subdivision (b) is satisfied by a conviction for "[a]rson in violation of subdivision (a) of Section 451, or arson in violation of any other provision of Section 451 . . . where the act posed a substantial danger of physical harm to others." Section 451, subdivision (b), penalizes "[a]rson that causes an inhabited structure or inhabited property to burn." It does not require injury to any person, nor does it require that any person was present in the structure when it was burned. (An inhabited structure is one currently being used for residential purposes, even if it is temporarily unoccupied, i.e., if no person is present at the time of the arson. See *People v. Villalobos* (2006) 145 Cal.App.4th 310, 320 [51 Cal.Rptr.3d 678] [Fourth Dist., Div. Two], discussing burglary of an inhabited dwelling.) Consequently, a conviction for arson of an inhabited structure in violation of section 451, subdivision (b) does not, in itself, prove that the arson posed a substantial danger of physical harm to others. Accordingly, Dr. Studden's testimony that Baker was convicted of arson of an inhabited structure is not substantial evidence that her crime satisfied the requirement that the crime posed a substantial risk of harm to others. (§ 2962, subds. (b) & (e)(2)(L).)

■ The only evidence, apart from Dr. Studden's testimony, that established that anyone was present when the house was set on fire or that for any other reason the act posed a substantial danger of physical harm to others, is the fragment of the probation report admitted into evidence. The report states that it was reported that Baker's brother was treated for smoke inhalation. Although the probation report is also hearsay, Baker did not object to it, and the court could therefore rely on it as evidence that Baker's crime did pose a substantial risk of physical harm to others.

■ As Baker points out, substantial evidence does not mean any evidence, no matter how slight. Instead, it is " ' " 'substantial' proof of the essentials which the law requires." ' [Citations.] The focus is on the quality, rather than the quantity, of the evidence." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651 [51 Cal.Rptr.2d 907].) Stated another way, substantial evidence is "evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined. [Citations.]" (*People v. Conner* (1983) 34 Cal.3d 141, 149 [193 Cal.Rptr. 148, 666 P.2d 5].) The evidence must be such that a reasonable trier of fact could have found the disputed fact proven beyond a reasonable doubt. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1126 [17 Cal.Rptr.2d 365, 847 P.2d 45].) Arson, however, is recognized as an inherently dangerous felony—i.e., one which inherently poses a substantial risk, not just of injury but of death—as a matter of law. (See *People v. Cavitt* (2004) 33 Cal.4th 187, 197 [14 Cal.Rptr.3d 281, 91 P.3d 222]; § 189 [murder in the commission or attempted commission of specified felonies, including arson, constitutes first degree murder].) Consequently, only slight evidence is necessary to establish that a specific act of arson posed a substantial risk of physical injury to another person for purposes of section 2962, subdivision (e)(2)(L). Here, the statement in the probation report that Baker's brother had to be treated for smoke inhalation rationally supports the inference that he was present in the house when it was set on fire. In turn, this rationally supports the conclusion that Baker's act put at least one other person at substantial risk of physical harm.

### 90 Days of Treatment

■ Section 2962, subdivision (c) provides as a criterion for MDO determination that the prisoner must have "been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release." Baker contends that Dr. Studden's testimony on this point does not constitute substantial evidence because it is both hearsay and not a proper subject for expert opinion testimony. We agree that it is both. However, Baker did not object to her testimony on this subject on either ground, and consequently the issues were not preserved for review on appeal.

(Evid. Code, § 353, subd. (a); *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746] [reviewing court will ordinarily not entertain challenge to a ruling if an objection could have been made in the trial court but was not].)

## DISPOSITION

The judgment is affirmed.

Richli, J., and Miller, J., concurred.