Filed 10/22/13  State Dept. of State Hospitals v. Devoe CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STATE DEPARTMENT OF STATE HOSPITALS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALAN DEVOE,<br><br>    Defendant and Appellant. | 2d Civil No. B242838<br>(Super. Ct. No. MI 120116)<br>(San Luis Obispo County) |

Alan Devoe, a mentally disordered offender (MDO), appeals a superior court order that he receive "involuntarily administered psychotropic medication."  (*In re Qawi* (2004) 32 Cal.4th 1; Welf. & Inst. Code, § 5300.[1])  Respondent State Department of State Hospitals (Department) filed a petition for a medication order.  The trial court granted the petition and found Devoe is a danger to others and that he lacks the capacity to refuse medication treatment.  We conclude, among other things, that substantial evidence supports the court's findings.  We affirm.

FACTS

On June 12, 2012, the Department filed a "petition for an order to compel involuntary treatment with psychotropic medication for [Devoe,] a mentally disordered offender patient pursuant to *In re Qawi* . . . ."  It alleged Devoe has a history of mental

---

[1] All statutory references are to the Welfare and Institutions Code.

illness, he refuses to take medication, and he "presents a danger to others without psychotropic medication."

At trial, Dr. Joshua Deane, a staff psychiatrist at Atascadero state hospital, testified that Devoe is a mentally disordered offender who is bipolar, has poor impulse control, a "thought disorder," and a "mood disturbance" disorder. He is delusional with "extremely poor" insight. Devoe is unable to provide details about his mental illness.

Two recent events showed Devoe's potential "danger to others." In February 2012, after an altercation with another patient, the medical staff tried to intervene. Devoe was uncooperative and he became "belligerent." He took "a fighting stance" and had to be placed in "full bed restraints." In May 2012, Devoe became "agitated for several hours." He called the unit supervisor a "bitch" and he "doused" a cup of urine onto the chest of a female medical staff member.

Deane said Devoe is "a danger to himself and others without psychotropic medication." Because Devoe does not want to take his medication, the medication must be "administered" involuntarily. There is no "less intrusive" way "to manage his thought disturbance," "mood disturbance" and "violent impulse."

The Department's counsel asked, "[I]s Mr. Devoe able to understand information required for him to consent to psychotropic medication?" Deane: "I think only in a limited way." "[D]o you think Mr. Devoe can understand that medications can help his psychosis?" Deane: "I think in a very, very limited way." "[I]s Mr. Devoe competent or capable of making decisions about his psychiatric treatment?" Deane: "I think--again, I have to state that in a limited way he probably is able to agree."

Counsel asked, "Do you believe [Devoe] has enough insight to understand his need for psychotropic medication to treat his current mental symptoms?" Deane: "Probably not." "[Devoe] has a cognitive deficit [that] prevents him from intelligently understand[ing] the needs for medication treatment."

Devoe testified he receives a "Testosterone" shot and a "Prolixin" shot "twice a week--twice a month." He asked staff, "[C]an you adjust this shot, take me off one or

2.

another?" He testified, "[T]hey won't accommodate me on that . . . . So what am I supposed to do?" He wants "Abilify."

The trial court found that Devoe: 1) "is unable to control his aggression and is a danger to others without psychotropic medication," 2) "is unwilling to take such medication," and 3) is not competent "to refuse medical treatment." The court granted the Department's petition.

## DISCUSSION

### *Mootness*

The Department notes that the trial court signed the medication order on June 14, 2012. It authorized Atascadero State Hospital to administer medication "for the period of time not to exceed one year from the date of the order." That time period has now expired. The Department argues this appeal is consequently moot and should be dismissed. But the issues Devoe raises are capable of repetition. We will decide the merits. (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380-1381.)

### *Substantial Evidence on Dangerousness*

Devoe contends the evidence is insufficient to support the finding that he is subject to a medication order because he is dangerous. He claims there is no admissible evidence that he committed a recent act or threat of violence. We disagree.

In reviewing the sufficiency of the evidence, we draw all reasonable inferences from the record in support of the trial court's findings. (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082.) We review the record in the light most favorable to the judgment. (*Ibid.*) We do not weigh the evidence or decide the credibility of the witnesses. (*Id.* at pp. 1082-1083.)

"[A]n MDO can be compelled to take antipsychotic medication in a nonemergency situation only if a court . . . makes one of two findings: (1) that the MDO is incompetent or incapable of making decisions about his medical treatment; *or* (2) that the MDO is dangerous within the meaning of Welfare and Institutions Code section 5300." (*In re Qawi*, *supra*, 32 Cal.4th at pp. 9-10.) Section 5300 subdivision (a) provides, in relevant part, "The person has attempted, inflicted, or made a serious threat of substantial

3.

physical harm upon the person of another after having been taken into custody, and while in custody, for evaluation and treatment . . . ."

There must be evidence to support two findings about the MDO to support a medication order based on the second *Qawi* prong of dangerousness. "First, there must be a generalized finding of 'demonstrated danger' to others." (*In re Qawi*, *supra*, 32 Cal.4th at p. 20.) This may be based on the patient's prior behavior within the past six years. (*Ibid.*) Second, there must be evidence of the MDO's "recent acts or threats of violence." (*Ibid.*)

Here Deane testified that Devoe is "a danger to himself and others without psychotropic medication." He also testified about the recent incidents involving Devoe in February and May 2012.

Devoe concedes that Deane's testimony is sufficient evidence on the first "demonstrated danger" category. But he contends his testimony regarding the two recent incidents was inadmissible because it was based on hearsay. He claims the Department should have presented evidence from eyewitnesses about the February and May incidents.

But Devoe's trial counsel did not make a hearsay objection. That omission is fatal to this claim on appeal. It is well established that "'incompetent hearsay admitted without objection is sufficient to sustain a finding or judgment.'" (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1245.)

Devoe claims it would have been futile for his counsel to object because the testimony about the two incidents was admissible to show he was a danger, but not to show recent acts of violence. Counsel could have made a limited use objection and requested the court not to consider the testimony for the recent violent act requirement. That would have provided the Department with notice to present additional evidence if it so desired. The failure to object bars relief on appeal. (*People v. Baker*, *supra*, 204 Cal.App.4th at p. 1245.)

On the merits the result is the same. The Department claims Deane properly relied on information in medical records and from the treating doctor about the two incidents to support his opinions about Devoe's dangerousness. It argues he did not have to be an eyewitness to those events to use them to support his opinions. We agree. "[A]n

4.

expert need not have personal knowledge of the matter as a prerequisite to testifying about it." (*People v. Miller* (1994) 25 Cal.App.4th 913, 917.) "The only prerequisite is that the matter considered '. . . is of a type that reasonably may be relied upon by an expert . . . .'" (*Ibid.*)

Before testifying, Deane reviewed the medical records and conferred with Devoe's treating psychiatrist. Devoe's counsel did not object to the reliability of this source information. A medical expert's reliance on the history contained in medical records and from the treating physician is generally regarded as reasonable because of its reliability. Treating physicians are a reliable source of information on the patient. (*Gunn v. Employment Development Dept.* (1979) 94 Cal.App.3d 658, 664, fn. 6.) "Medical records, in general, warrant consideration as trustworthy evidence." (*Cucuras v. Secretary of DHHS* (Fed.Cir. 1993) 993 F.2d 1525, 1528.) "The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." (*Ibid.*)

Here the two incidents involving medical staff occurred while Devoe was an MDO patient in the state hospital where Deane works as the "Acting Chief Psychiatrist." They were documented in medical records and were relevant for diagnosis and treatment. They contain information that Deane reasonably relied upon to support his opinions. (*People v. Miller*, *supra*, 25 Cal.App.4th at p. 917; *Cucuras v. Secretary of DHHS*, *supra*, 993 F.2d at p. 1528.)

Devoe claims Deane's ability to recite that information to support his opinions is not the equivalent of proof that the two incidents took place. Had he raised that as an objection at trial he might have prevailed on this issue. (*People v. Baker*, *supra*, 204 Cal.App.4th at p. 1246, fn. 9 [disagreeing with *People v. Miller*].) But that would not change the ultimate result because, as will be seen, substantial evidence supports the trial court's finding on the issue of Devoe's lack of capacity to make decisions about medical treatment. (*In re Qawi*, *supra*, 32 Cal.4th at pp. 9-10.)

Moreover, Devoe's claims about a miscarriage of justice and prejudice are refuted by the record. Devoe did not place the recent violent act requirement in issue for trial. He did not challenge the allegations in the Department's verified petition (paragraph 5) about his recent violent conduct. He did not file an answer or responsive pleading, or deny any of the acts mentioned in paragraph 5. At the hearing his only claim was that he had the capacity to make decisions about his medications. In his closing argument, Devoe's trial counsel did not challenge the accuracy of Deane's testimony about these incidents. In his testimony, Devoe did not deny that these incidents took place. In fact, the trial court could reasonably infer that Devoe's testimony constituted an admission of his participation in these two incidents. Devoe said, "I had twice problems here"; "[M]e and my peer get into it and then staff get into it . . . ."

*Evidence about Devoe's Ability to Make Medication Treatment Decisions*

Devoe contends there is no substantial evidence to support the trial court's finding that he "lacks capacity to refuse treatment." We disagree.

The "specific competency to consent to drug treatment" involves three factors: (1) "whether the patient is aware of his . . . situation," (2) "whether the patient is able to understand the benefits and the risks of, as well as the alternatives to, the proposed intervention," and (3) "whether the patient is able to understand and to *knowingly and intelligently evaluate the information* required to be given patients who informed consent is sought [citation] and *otherwise participate in the treatment decision by means of rational thought processes*.'" (*In re Qawi*, *supra*, 32 Cal.4th at pp. 17-18, italics added.)

Devoe selects a portion of Deane's testimony and argues it supports inferences that undermine the trial court's findings. He claims Deane indicated that Devoe had some ability 1) to understand information required for him to consent to medication and 2) to know that medications could help his psychosis. But Deane's testimony was highly qualified. He said Devoe could understand "only in a limited way" or in "a very, very limited way." He did not testify that he had the ability to "knowingly and intelligently evaluate the information." (*In re Qawi*, *supra*, 32 Cal.4th at p. 18.) Moreover, even if there are some favorable inferences from this portion of his testimony, it

6.

does not change the result. The issue is not whether some evidence supports Devoe, it is whether substantial evidence supports the judgment. Even if Deane's testimony supports conflicting inferences, the trial court, within its authority as trier of fact, resolved the conflict against Devoe.

Additional evidence supports the trial court's findings. Deane testified that Devoe has a "cognitive deficit [that] prevents him from intelligently understand[ing] the needs for medication treatment." Devoe can be "extremely" delusional and has "very poor" control over his impulses. If left "to his own devices, he most likely will refuse medication treatment." He has "refused" to take the medication which the medical staff recommended. If he does not receive "psychotropic medication," his "mood problem" and "thought disorder" will become "more prominent." Deane said that given Devoe's "impulse control issue and violent propensity, [this] may result [in] violence . . . ."

Devoe notes that he has expressed preferences regarding medications. But Deane testified Devoe lacks the "ability" to have "insight" as to why a medication was "chosen for him." Devoe was not able to answer a question about how a medication helped him with his "psychosis." He could not answer questions about what other medications "will do for him." Nor could Devoe provide details about his mental illness. The evidence is sufficient.

The order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

7.

Michael Barton, Judge

Superior Court County of San Luis Obispo

_____

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Jennifer M. Kim, Supervising Deputy Attorney General, Amanda G. Plisner, Deputy Attorney General, for Plaintiff and Respondent.