Filed 9/30/21  P. v. Palomo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JORGE ALBERTO PALOMO,<br><br>　　　Defendant and Appellant. | E074090<br><br>(Super. Ct. No. FSB1303559)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Elia V. Pirozzi, Judge.  Affirmed.

Cindy Brines under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant, Jorge Palomo murdered his sister-in-law, A.R., with an ax in his living room. He then went to his wife Jane Doe's bedroom, ax in hand, where she was laying on the bed while his two minor children, John and Jimmy Doe, were playing video games. A physical altercation ensued between defendant, Jane Doe, and John, which left Jane Doe with injuries. Defendant denied attacking them or intending to hurt them, and claimed that Jane Doe's injuries were an accident.

A jury convicted defendant of second degree murder for killing A.R. (Pen. Code, § 187, subd. (a); count 1)[1] and attempted voluntary manslaughter of Jane Doe (§§ 192, subd. (a), 664; count 2). The jury found true the special allegations that defendant used a deadly and dangerous weapon in the commission of counts 1 and 2 (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)), and that he personally inflicted great bodily harm on Jane Doe (§ 12022.7, subd. (e)). The trial court sentenced defendant to a determinate term of 12 years, six months and an indeterminate term of 15 years to life.

On appeal, defendant argues the trial court prejudicially erred by failing to sua sponte instruct the jury on self-defense. We disagree and affirm.

---

[1] All further statutory references are to the Penal Code.

2

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe's sister, A.R., lived at defendant's house for over 20 years. Defendant did not like A.R. living in the home because she interfered with his marriage with Jane Doe and the way they raised John Doe and Jimmy Doe. Defendant thought A.R. intentionally tried to ruin his life. Defendant routinely told her that she needed to get a job and find a place of her own, but she never did. Defendant also consistently told Jane Doe for over a year before killing A.R. that he wanted her to move out, but Jane Doe always sided with A.R.

About a week before the incident, Jane Doe saw defendant bring propane tanks into the house. On the night before the incident, she saw him working on the kitchen stove and asked why he had pulled it away from the wall, but he did not answer.

On the day of the incident, defendant told A.R. not to return to his house after she got off work. Later that day, defendant saw A.R. sitting on the couch. Defendant became angry and thought about killing her for two hours. He later attacked A.R. with an ax in the living room, hitting her several times and killing her.

According to Jane Doe, defendant then entered her bedroom and said, "This ends today." Jane Doe was lying in bed while John Doe, then 15 years old, and Jimmy Doe, then seven years old, were playing video games. Defendant swung the ax at Jane Doe, cutting her leg. Defendant then raised the ax toward Jimmy Doe, but Jane Doe and John Doe stopped him. Jane Doe and John Doe struggled with defendant over the ax and

3

eventually wrestled it away from him. Jane Doe told Jimmy Doe to get help. Jimmy Doe fled to a neighbor's house and told her to call 911.

Defendant left Jane Doe's room and returned with a foot-long knife. Defendant kicked Jane Doe in the chest so hard that she fell back onto the bed. Defendant jumped on top of her and stabbed her in the arms and chest multiple times. Jane Doe grabbed the blade of the knife to stop defendant. John Doe helped Jane Doe hold the blade of the knife and then hit defendant with the ax. Jane Doe suffered cuts to her neck, chin, arms, chest, and hands from the knife.

Later, defendant left the room and returned with a metal bar, ran toward Jane Doe, and hit her with the bar. Jane Doe then grabbed the bar and took it away from defendant. John Doe hit defendant with the ax and then ran into the living room with Jane Doe.

Once in the living room, Jane Doe smelled an odor of gas and saw A.R. lying motionless on the couch. Jane Doe turned A.R., who was non-responsive, and saw that she had cuts on her throat and shoulder.

Defendant walked into the living room holding a sledgehammer and tried to attack Jane Doe and John Doe with it. Jane Doe defended herself with the metal bar. The front door had been padlocked, so Jane Doe used the metal bar to pry off the padlock. John Doe broke windows with the ax because he and Jane Doe were having trouble breathing because of the gas.

Jane Doe went outside to look for Jimmy Doe and defendant followed her while holding the knife. Defendant said he wanted the police to shoot him. While fighting with

4

Jane Doe outside, defendant pushed her away, but the blade of defendant's knife got close to her. John Doe fled to a neighbor's house and told the neighbor to call 911.

Law enforcement arrived immediately. Defendant was standing outside holding the knife and said, "Shoot me. Shoot me."

A responding officer went into the house and smelled a strong odor of gas and propane. The officer had to hold his breath while inside and saw the stove had been pulled away from the wall and its gas line had been severed. The officer also found a propane tank in John Doe's bedroom.

Defendant partially disputed Jane Doe's account. Defendant did not deny attacking A.R. with the ax, but he claimed that he never intended to hurt Jane Doe, John Doe, or Jimmy Doe. According to defendant, he went into Jane Doe's room to tell her what he had done to A.R. while holding the ax. Jane Doe immediately tried to grab the ax and began fighting with defendant. Defendant told John Doe and Jimmy Doe to leave the room so they would not get hurt, but only Jimmy Doe left. John Doe then tried to grab the ax from defendant and they fell to the ground. When John Doe got up, he hit defendant with the ax while Jane Doe hit him with the metal bar. Because Jane Doe had the bar and John Doe had the ax, defendant grabbed a knife which Jane Doe and John Doe tried to take from him. Jane Doe and John Doe cut themselves by grabbing the blade of the knife.

Defendant maintained that he never attacked Jane Doe or John Doe with the ax or the knife and that Jane Doe accidentally cut herself when she tried to grab the knife. He

5

also denied trying to attack them with a metal bar or sledgehammer. Defendant did not think Jane Doe or John Doe tried to kill him.

III.

DISCUSSION

Defendant's sole argument on appeal is that the trial court prejudicially erred by failing to sua sponte instruct the jury on the defense of self-defense. We disagree.

Trial courts have an obligation to sua sponte instruct the jury on all potential defenses that are "supported by substantial evidence [and] . . . are not inconsistent with the defendant's theory of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.) "A trial court is required to instruct sua sponte on any defense, including self-defense, only when there is substantial evidence supporting the defense, and the defendant is either relying on the defense or the defense is not inconsistent with the defendant's theory of the case." (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49 (*Villanueva*).)[2] But if the defense is "inconsistent with the defendant's theory of the case, the trial court should instruct on the defense only if the defendant wishes the court to do so." (*Ibid.*)

"[S]ubstantial evidence does not mean any evidence, no matter how slight." (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1247.) Substantial evidence is "evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149.)

---

[2] Defendant did not rely on the defense of self-defense.

6

Defendant argues the trial court had to sua sponte instruct the jury with CALCRIM No. 505, Justifiable Homicide: Self-Defense or Defense of Another. That instruction provides in relevant part: "The defendant is not guilty of attempted voluntary manslaughter if he was justified *in attempting to kill someone in self-defense*. The defendant acted in lawful self-defense if: [¶] 1. The defendant reasonably believed that he was in imminent danger of being killed or suffering great bodily injury; [¶] 2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger; [¶] and [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger." (Italics added.)

The defense of self-defense thus presupposes the defendant acted intentionally and. It is therefore inconsistent with the defense of accident. (*People v. Curtis* (1994) 30 Cal.App.4th 1337, 1358 ["Defendant's testimony that the murder weapon went off by accident is inconsistent with self-defense"]; accord, *Villanueva*, *supra*, 169 Cal.App.4th at p. 51 ["an accidental shooting is *inconsistent* with an assertion of self-defense"]; *People v. McCoy* (1984) 150 Cal.App.3d 705, 708-709 [defense of accident "is inconsistent with self-defense, as self-defense implies an intentional shooting"].)

Defendant told investigators after his arrest that he accidentally caused Jane Doe's injuries during their struggle over the knife. Defendant testified at trial that he never tried to kill Jane Doe, he did not intentionally hit her with any weapon, and that she accidentally cut herself when she grabbed the knife. Defense counsel emphasized in closing argument that defendant testified Jane Doe's injuries were an accident. At no

7

point did defendant testify or argue that he intentionally "attempt[ed] to kill [Jane Doe] in self-defense" or that he "believed that he was in imminent danger of being killed or suffering great bodily injury" or that he "believed that the immediate use of deadly force was necessary to defend against th[e] danger" that Jane Doe posed. (CALCRIM No. 505.)

Defendant's theory of the case—that Jane Doe's injuries were an accident—was therefore inconsistent with the defense of self-defense. (*People v. Curtis*, *supra*, 30 Cal.App.4th at p. 1358.) As a result, the trial court had no obligation to sua sponte instruct the jury on self-defense. (See *Villanueva*, *supra*, 169 Cal.App.4th at pp. 49, 51.) The trial court had to instruct the jury on the defense only if defendant requested the instruction, which he did not do. (*Ibid*.)

The two cases defendant relies on, *Villanueva*, *supra*, 169 Cal.App.4th at page 41 and *People v. Elize* (1999) 71 Cal.App.4th 605, do not change our conclusion. In both cases, the defendant requested a self-defense instruction, so the issue here—whether the trial court had to sua sponte instruct on self-defense—was not presented in either case. (See *Villanueva*, *supra*, 169 Cal.App.4th at p. 52 ["As there was sufficient evidence of self-defense, and defendant requested the instruction, the trial court was required to give the instruction"]; *People v. Elize*, *supra*, at p. 610 ["[T]he requested self-defense instructions should have been given in this case"]; *id*. at p. 616 ["[T]he issue of sua sponte duty [to instruct] or not has no place in this case"].)

8

Because the defense of self-defense was inconsistent with defendant's theory that Jane Doe's injuries were an accident, and defendant did not request a self-defense instruction, the trial court did not err in failing to sua sponte instruct the jury on self-defense.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

SLOUGH

J.

9