Filed 10/21/21  P. v. Moreno CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075373 |
| v. | (Super. Ct. No. FWV19003528) |
| DAVID JOSEPH MORENO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant David Joseph Moreno cut A.F.'s neck, sliced J.V.'s throat from ear to ear, and confronted A.R. while holding a steak knife in his pocket. He argues (1) the trial court erroneously declined to instruct the jury on self-defense; (2) insufficient evidence supports his conviction for assaulting A.F. with a deadly weapon; and (3) the trial court improperly instructed the jury on his flight from the crime scenes. We reject defendant's contentions and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

While in De Anza Park in Ontario, defendant encountered A.F., and asked him, "[W]here you from? What you doing in my neighborhood?" A.F. responded, "I don't gang-bang," and told defendant to leave him alone. Defendant replied, "stay the f—k out my neighborhood."

According to A.F., defendant then pulled out "some kind of hatchet." A.F. was not sure what the object was, but described it as a "weird looking tool" with a sharp metal blade and teeth. A.F. thought it may have been a kitchen knife or a "chisel-type tool." A.F. testified that defendant grabbed his arm, yanked him close, and swung the object at his neck. A.F. dodged defendant's swing but the object sliced his neck. Defendant then ran to his girlfriend's car, and they drove away. A.F.'s neck was bleeding, so he applied

pressure to his wound with a towel. A responding paramedic observed that A.F.'s neck had a loose flap of skin with several small scrapes.

Shortly afterward, defendant and his girlfriend picked up J.V. J.V. sat in the backseat of the car and they drove to Cypress Park in Ontario. According to J.V., defendant asked J.V. if he had "problems with the neighborhood." Defendant then slashed J.V.'s neck from ear to ear. Defendant went to his girlfriend's car and they drove off.

Defendant's girlfriend then drove to a liquor store. Defendant got out of the car, confronted A.R., and asked him, "[W]here you from?" "You from C9?"[1] A.R. responded, "[N]o bro, I ain't even gang bang or none of that." A.R. got a "bad vibe" from defendant, who inched closer while holding his hand in his front right pocket. Law enforcement arrived, arrested defendant, and found a steak knife in his right front pocket. The officers also found a knife in the front passenger door of defendant's girlfriend's car that had a fixed, sharp, metal blade.

Defendant disputed the victims' accounts. As to A.F., defendant testified that he approached A.F. to get drugs from him on credit. A.F. refused to give defendant drugs on credit because defendant had "burned" him in the past and still owed A.F. drug money. A.F. called defendant a "smoker" and put his hand up to defendant's face, making a "talk to the hand" gesture, which defendant did not appreciate. Defendant swatted A.F.'s hand away and said "[g]et your f—king hand out of my face." Defendant

---

[1] Defendant is a member of the Southside Onterio (*sic*) gang. C9 is a rival gang.

3

put his hand in A.F.'s face, and A.F. swatted it away.  Defendant then "kind of lunged out towards" A.F. and "a little scuffle" ensued during which A.F. sustained the wound to his neck.

The jury found defendant not guilty of attempted murder of A.F., but convicted defendant of attempted murder of J.V. (Pen. Code, §§ 187, subd. (a), 664; count 2),[2] assault with a deadly weapon on A.F. and J.V. (§ 245, subd. (a)(1); counts 3 & 4), and carrying a concealed dirk or dagger (§ 21310; count 5).  The jury found the attempted murder of J.V. was willful, deliberate, and premeditated (§§ 189, subd. (a), 664, subd. (a)) and that defendant personally used a deadly or dangerous weapon in its commission (§ 12022, subd. (b)(1)).  As to counts 2, the jury found true that defendant personally inflicted great bodily injury (GBI) on J.V. (§ 12022.7, subd. (a)).  As to counts 2 through 5, the jury found true that the offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)).  The jury also found true that defendant had suffered two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12 subds. (a)-(d)) and that both convictions qualified as serious felonies (§ 667, subd. (a)(1)).  The trial court sentenced defendant to 89 years to life in prison.

---

[2] All further statutory references are to the Penal Code.

III.

DISCUSSION

A. *Self-Defense Instruction*

Defendant argues the trial court erroneously refused his request to instruct the jury on self-defense as to count 3, assault with a deadly weapon on A.F. In defendant's view, his testimony constituted substantial evidence that he acted in self-defense and thus the trial court had to instruct the jury on self-defense. We disagree.

Trial courts must instruct the jury on all potential defenses that are "supported by substantial evidence [and] . . . are not inconsistent with the defendant's theory of the case." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047.) "A trial court is required to instruct . . . on any defense, including self-defense, only when there is substantial evidence supporting the defense, and the defendant is either relying on the defense or the defense is not inconsistent with the defendant's theory of the case." (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.) Thus, "[a] trial court has no duty to instruct the jury on a defense—even at the defendant's request—unless the defense is supported by substantial evidence." (*People v. Curtis* (1994) 30 Cal.App.4th 1337, 1355.)

"[S]ubstantial evidence does not mean any evidence, no matter how slight." (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1247.) Substantial evidence is "evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined." (*People v. Conner* (1983) 34 Cal.3d 141, 149.)

"'To justify an act of self-defense . . . , the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him [or her].  [Citation.]' [Citation.]  The threat of bodily injury must be imminent [citation], and ' . . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.'" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065.)  The defendant's belief in the need to act in self-defense must be objectively reasonable.  (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.)  Whether a defendant reasonably acted in self-defense "is determined from the point of view of a reasonable person in the defendant's position. (*People v. Minifie*, *supra*, at p. 1065.)

Even if defendant's account of what transpired between him and A.F. is true, there is no substantial evidence that defendant acted in justifiable self-defense.  "[T]he ordinary self-defense doctrine—applicable when a defendant *reasonably* believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1.)  According to defendant, he slapped A.F.'s hand away from his face and then "kind of lunged out towards" A.F., which initiated their "little scuffle" during which he "could have possibly scratched [A.F.]"  Defendant did not testify that he hit A.F.'s hand or lunged at A.F. to protect himself, but rather because he felt "belittle[d]" by A.F. and "wanted to be heard."  So, assuming defendant's account is true, he started the "scuffle" with A.F. that led to A.F.'s injuries.  Self-defense was

6

therefore not available to defendant.  (*In re Christian S.*, *supra*, at p. 773, fn. 1.)  The trial court properly declined to instruct the jury on self-defense.

B.  *Assault With a Deadly Weapon on A.F.*

Defendant argues there is insufficient evidence that he assaulted A.F. with a deadly weapon.  We disagree.

1.  *Standard of Review*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.] . . .  We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility."  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  If the circumstances

reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) We may reverse a conviction for a lack of substantial evidence only if it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'"'" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

### 2. *Analysis*

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "For purposes of assault with a deadly weapon under section 245(a)(1), 'a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." [Citation.]'" (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 84.)

The thrust of defendant's argument is that there is insufficient evidence he assaulted A.F. with a deadly weapon because A.F. did not know what the object was and he suffered minor wounds. Although A.F. was not certain what the object was, he testified that it looked like "some kind of hatchet" that had a sharp blade with teeth. A.F. also testified that he believed defendant did not seriously injure him only because he "jumped out [of the] way" when defendant swung the object. A.F. applied pressure to his neck with a towel and drove to find help because he was concerned that his injuries were serious.

8

The evidence thus supports the reasonable inference that defendant "actually used the [object] in a way capable of producing, and likely to produce, death or great bodily injury [to A.F.]—that is, as a deadly weapon." (*Raymundo M.*, *supra*, 52 Cal.App.5th at p. 88.)

Defendant argues that A.F.'s relatively minor injuries show that he did not use the object in a manner capable of killing A.F. or causing him great bodily injuries. But A.F. testified that the only reason he did not suffer serious injury is because he jumped out of the way to avoid defendant's swing. A.F. told the jury that, in his view, he "probably wouldn't be talking to you all right now" if he had not dodged defendant's attack. Despite A.F.'s minor injuries, the jury permissibly found that defendant assaulted A.F. with a deadly weapon. (See *In re Raymond*, *supra*, 52 Cal.App.5th at p. 88.; accord, *People v. Nguyen* (2017) 12 Cal.App.5th 44, 48 [defendant, who pointed knife at police officers and took a step toward them from 10 to 15 feet away before they shot him, was liable for assault with a deadly weapon on peace officer]; *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1164 [defendant guilty of assault with a deadly weapon for displaying knife, asking victim "'Do you want to do this?,'" and running away]; *People v. Vorbach* (1984) 151 Cal.App.3d 425, 429 [brandishing knife in a threatening manner is sufficient evidence of assault with a deadly weapon].)

Moreover, "an aggressor should not receive the benefit of a potential victim fortuitously taking a defensive measure or being removed from harm's way once an assault is already underway." (*In re B.M.* (2018) 6 Cal.5th 528, 537.) Although A.F.

9

suffered minor injuries, the jury could have reasonably found that he would have suffered great bodily injury or been killed had he not avoided defendant's attack by jumping out of the way. Substantial evidence thus supports defendant's conviction for assaulting A.F. with a deadly weapon. (See *Raymundo M.*, *supra*, 52 Cal.App.5th at p. 90; see also *People v. Chance* (2008) 44 Cal.4th 1164, 1173 ["[A]n assault may occur even when the infliction of injury is prevented by environmental conditions or by steps taken by victims to protect themselves."]; *People v. Bernal*, *supra*, 42 Cal.App.5th at p. 1168 ["[A] jury could reasonably conclude that the [victim] would likely have been touched with the knife had he not moved out of the way"].)

C. *Flight Instruction*

The trial court instructed the jury with CALCRIM No. 372, which provides in relevant part: "If the defendant fled [or tried to flee] immediately after the crime was committed, that conduct may show that he [or she] was aware of his [or her] guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." Defendant contends the trial court erred in doing so. We disagree.

"'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt." [Citations.]'" (*People v. Leon* (2015) 61 Cal.4th 569, 607 (*Leon*).)

10

For instance, in *Leon*, the California Supreme Court held the trial court properly instructed the jury on flight when the defendant was charged with evading a police officer with willful disregard for safety and robbery murder. (*Leon*, *supra*, 61 Cal.4th at p. 607.) The court reasoned that the defendant's flight was relevant to his consciousness of guilt for both offenses. (*Ibid*.)

*Leon* controls here. Defendant's flight from De Anza Park after his altercation with A.F. and his flight from Cypress Park after attacking J.V. was relevant to assessing his consciousness of guilt for the attempted murder and assault with a deadly weapon charges. The trial court therefore did not err in giving CALCRIM No. 372. (See *Leon*, *supra*, 61 Cal.4th at p. 607; see also *People v. Henry* (1937) 23 Cal.App.2d 155, 165 [jury instruction on flight proper because defendant's flight was relevant to defendant's consciousness of guilt].)

Finally, we disagree with defendant that CALCRIM No. 372 is "improperly argumentative," conflicts with section 1127c, lessened the prosecution's burden, undermined the presumption of defendant's innocence, or allowed the jury to find him guilty based on his flight from the crime scene. Courts have consistently rejected these arguments and held that CALCRIM No. 372 is proper when, as here, there is substantial evidence that the defendant fled the scene of a crime. (See e.g., *People v. Paysinger* (2009) 174 Cal.App.4th 26, 30 [rejecting arguments that CALCRIM No. 372 undermines the presumption of innocence or lowers the prosecution's burden]; *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1158-1159 [rejecting argument that CALCRIM No.

11

372 allows jury to "presume[] the existence of" the defendant's guilt from his flight];

*People v. Price* (2017) 8 Cal.App.5th 409, 454 [rejecting arguments that CALCRIM No. 372 is "impermissibly argumentative" and conflicts with section 1127c].)  We agree with these decisions and follow them here.  As a result, we conclude the trial court did not err by instructing the jury with CALCRIM No. 372.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


MILLER
Acting P. J.


RAPHAEL
J.